# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DANIEL GAINES, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:24-CV-1511-RHH |
| JASON EMMONS, et al., | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

This matter is before the Court on Defendant Jason Emmons' ("Emmons") Motion to Dismiss, filed November 19, 2024, and Defendants Thomas Duggan, Jr. ("Duggan"), Jalesia Kuenzel ("Kuenzel"), Molly Jaskiewicz ("Jaskiewicz"), Drew Crews ("Crews"), and Lester Stuckmeyer's ("Stuckmeyer") Motion to Dismiss, filed November 26, 2024. (ECF Nos. 10, 15). Plaintiff Daniel Gaines filed responses to both motions. (ECF Nos. 14, 18). Emmons filed a reply, to which Plaintiff filed a sur-reply. (ECF Nos. 17, 24). The motions are fully briefed and ready for disposition. For the reasons stated below, Defendants' motions are granted.

### I.     Factual and Procedural Background

On October 4, 2024, Plaintiff initiated this lawsuit *pro se* against Defendants in the Circuit Court of Jefferson County, Missouri. (ECF No. 5). Plaintiff sues each Defendant in his or her individual and official capacities for alleged wrongdoing during the prosecution of a municipal ordinance violation.

On November 12, 2024, Duggan, Kuenzel, Jaskiewicz, Crews and Stuckmeyer removed this matter to federal court based on federal question jurisdiction. (ECF No. 1). As noted above,

Defendants filed the instant Motions to Dismiss on November 19, 2024, and November 26, 2024. (ECF Nos. 10, 15).

Plaintiff's Petition (hereinafter "Complaint" or "Compl.") alleges in pertinent part as follows[1]:

On November 15, 2023 Emmons, then a prosecutor employed by the Jefferson County Prosecutor's Office, initiated criminal proceedings against Plaintiff. (Compl., ¶¶ 2, 13). Plaintiff claims Emmons falsified the document outlining the criminal charges. (*Id.*, ¶ 14, citing Plaintiff's Exh. A). Specifically, Plaintiff alleges that Emmons (1) stated the event at issue did not take place at a school, despite possessing police reports that the incident took place in the parking lot of Windsor High School, and (2) indicated Plaintiff was trespassing on private property, even though a public school constitutes public property open and accessible to the public. (*Id.*, ¶¶ 15, 16).

During Plaintiff's arraignment Stuckmeyer, a Jefferson County Municipal Court Judge, asked Plaintiff how he pled to the charges. (Compl., ¶¶ 7, 17). When Plaintiff requested clarification on the charges, Stuckmeyer entered a plea of not guilty for Plaintiff. (*Id.*, ¶ 17). Stuckmeyer then set the matter for a bench trial, even though Plaintiff stated he wanted a jury trial. (*Id.*, ¶¶ 18, 19). Plaintiff claims when he complained about the alleged violation Crews, a bailiff employed by the Jefferson County Sheriff's Office, told Plaintiff to shut up. (*Id.*, ¶¶ 6, 19).[2]

Plaintiff sent an email to Kuenzel, a Jefferson County prosecutor and Emmons' supervisor, informing her of the alleged fraud before the court. (Compl., ¶¶ 4, 21). Kuenzel did not respond to the email, however. (*Id.*, ¶ 21).

---

[1] For purposes of this Order only, the allegations in the Complaint are taken as true. *McShane Constr. Co., LLC v. Gotham Ins. Co.*, 867 F.3d 923, 927 (8th Cir. 2017).
[2] Plaintiff claims he informed Stuckmeyer and Emmons during the arraignment that the charges were based on fraud, but Stuckmeyer allowed the matter to proceed. (Compl., ¶ 20).

During a hearing on June 26, 2024, Plaintiff was informed that Emmons was no longer employed by the Jefferson County Prosecutor's Office, and that Duggan, a Jefferson County prosecutor, was taking over Plaintiff's case.[3]  (Compl., ¶¶ 3, 22).  Plaintiff again mentioned the false information contained in the charging document, but both Stuckmeyer and Duggan ignored him.  (*Id.*, ¶ 23).  Plaintiff requested that he be assigned an attorney, but Stuckmeyer denied the request because the prosecution was not seeking jail time.  (*Id.*, ¶ 26).

During a court hearing on August 21, 2024, Plaintiff spoke with Mr. Jim Drury ("Drury"). (Compl., ¶ 28).  Drury stated he would like to sit in on Plaintiff's proceeding, to see how Plaintiff handled himself as a pro se litigant.  (*Id.*).  Stuckmeyer instructed Crews to remove Drury from the courtroom and close the courtroom to the public.  (*Id.*, ¶ 29).  Stuckmeyer then proceeded to deny Plaintiff's two motions to vacate[4], stating he did not have jurisdiction to address the motions. (*Id.*, ¶¶ 27, 31-32, citing Plaintiff's Exh. D).  Both Duggan and Jaskiewicz, Jefferson County Municipal Court Administrator, informed Stuckmeyer that Plaintiff was recording the proceeding. (*Id.*, ¶¶ 5, 35).

Plaintiff informed Stuckmeyer that he would seek damages from his wrongful accusers. (Compl., ¶ 36).  Stuckmeyer responded that he lacked the authority to assess damages, and that Plaintiff would have to seek redress in another way.  (*Id.*, ¶¶ 36-38).  Duggan informed Plaintiff that Plaintiff would only be allowed to bring up to the jury things directly related to the citation, and Stuckmeyer "vehemently agreed."  (*Id.*, ¶ 45).

---

[3] Kuenzel was also Duggan's supervisor.  (Compl., ¶ 21).
[4] Plaintiff states as follows with respect to the motions to vacate:  "Prior to the last hearing Plaintiff attended, Plaintiff filed two Motions to Vacate, or at least address, two void orders in place against Plaintiff pursuant to Rule 74.06(b)(2) & (4) as both void orders deprive Plaintiff of Rights granted to him by the US Constitution."  (Compl., ¶ 27).

As a result of the alleged "misconduct and blatant and malicious Deprivation of Rights", Plaintiff filed three motions: one seeking to disqualify Stuckmeyer, one to disqualify Duggan, and one to transfer the case to the Circuit Court since Stuckmeyer, Duggan and Kuenzel all believed the Municipal Court lacked jurisdiction to address all the issues. (Compl., ¶ 51). On the date set for the hearing on the motions, Plaintiff was experiencing stomach issues. (*Id.*, ¶ 52). Plaintiff sought to appear via Zoom or telephone, but Jaskiewicz stated Plaintiff would need proof of a medical issue, *i.e.*, a doctor's note, to miss the hearing. (*Id.*, ¶¶ 52, 53). Stuckmeyer then held the hearing, and denied Plaintiff's motions after hearing objections from Duggan. (*Id.*, ¶¶ 54-55, citing Plaintiff's Exh. F).

As noted above, Plaintiff filed his Complaint in the Circuit Court of Jefferson County on October 4, 2024. (ECF No. 5). Plaintiff brings the following causes of action: 42 U.S.C. § 1983 Deprivation of Rights under Color of Law against all Defendants (Count I); Fifth Amendment Violations against all Defendants (Count II); Sixth Amendment Violations against Defendants Stuckmeyer, Emmons, Duggan and Crews (Count III); Fourteenth Amendment Violations against Defendants Stuckmeyer, Duggan and Kuenzel (Count IV); Abuse of Authority against Defendants Stuckmeyer, Duggan, Kuenzel and Emmons (Count V); 42 U.S.C. § 1985 Conspiracy to Interfere with Civil Rights against all Defendants (Count VI); and Fraud Before the Court against all Defendants (Count VII). As relief, Plaintiff seeks compensatory and punitive damages.

Defendants Duggan, Kuenzel, Jaskiewicz, Crews and Stuckmeyer removed Plaintiff's suit to this Court on November 12, 2024, on the basis of federal question jurisdiction. (ECF No. 1). As noted above, Defendants filed their Motions to Dismiss on November 19, and November 26, 2024. (ECF Nos. 10, 15).

**II.     Standard**

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In the complaint, a plaintiff "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Id.* at 562 (quoted case omitted). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id.* at 556. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678.

District courts must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "'if the essence of an allegation is discernible,'" courts should "'construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.'" *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even *pro se* complaints must allege facts that, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). District courts are not required to assume facts that are not alleged, *Stone*, 364

- 5 -

F.3d at 914-15, or interpret procedural rules so as to excuse mistakes by those who proceed without counsel.  *See McNeil v. United States,* 508 U.S. 106, 113 (1993).  The Court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

"'[A]bsolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.'" *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 419 n. 13 (1976)).  "Where an official's challenged actions are protected by absolute immunity, dismissal under Rule 12(b)(6) is appropriate." *Id.* (citation omitted).

### III.  Discussion

Defendant Emmons filed a motion to dismiss, and Defendants Duggan, Kuenzel, Jaskiewicz, Crews, and Stuckmeyer collectively filed a motion to dismiss.  Defendants have overlapping arguments for immunity from suit based on their roles in Plaintiff's prosecution.

#### A.  Official Capacity Claims

Officials may be named in § 1983 lawsuits in either their official capacity, their personal (or "individual") capacity, or both.  In this case, as noted above Plaintiff sues Defendants in both their official and individual capacities.  In an official capacity claim against an individual, however, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017).  Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).  *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that an official capacity suit against a sheriff and his deputy "must be treated as a suit

against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").  Therefore, Plaintiff's claims against Defendants in their official capacities are actually claims against Jefferson County.

A local governing body such as Jefferson County can be sued under 42 U.S.C. § 1983.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  However, a municipality cannot be held liable merely because it employs a tortfeasor. *See A.H. v. St. Louis County, Mo.*, 891 F.3d 721, 728 (8th Cir. 2018) ("In an action under § 1983, a municipality ... cannot be liable on a respondeat superior theory").  Rather, to prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075.  Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise."  *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (internal quotation marks and citations omitted).  *See also Marsh v. Phelps County*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

Upon review of the record, the Court finds Plaintiff has not identified any Jefferson County policy or custom that allegedly caused him harm, nor has he stated Jefferson County failed to properly train the individual Defendants.  Plaintiff's official capacity claims thus fail as a matter of law.

**B.  Individual Capacity Claims**

### 1. Defendants Emmons, Duggan, and Kuenzel

Defendants Emmons, Duggan and Kuenzel are or were, at times relevant to Plaintiff's claims, prosecutors for Jefferson County in the State of Missouri. Plaintiff alleges Emmons falsified information on the charging document in the prosecution of an alleged ordinance violation against Plaintiff. He alleges Duggan failed to rectify the false information when he took over the prosecution. Finally, Plaintiff alleges Kuenzel ignored emails from Plaintiff, and failed to speak up during a hearing she attended, thereby allowing the fraud to continue.

Defendants Emmons, Duggan and Kuenzel assert they are entitled to absolute prosecutorial immunity from Plaintiff's claims against them.

As stated above, "'absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.'" *Jordan v. Bell*, No. 4:21CV1242 HEA, 2022 WL 4245440, at *4 (E.D. Mo. Sep. 15, 2022) (quoting *Imbler*, 424 U.S. at 419). "It 'protects prosecutors against claims arising from their initiation of a prosecution and presenting a criminal case insofar as that conduct is intimately associated with the judicial phase of the criminal process.'" *Id.* (quoting *Sample*, 836 F.3d at 916 (internal quotation marks and citation omitted)). *See also Imbler*, 424 U.S. at 430-31 (prosecutors are absolutely immune from civil rights claims based on actions taken while initiating a criminal prosecution and presenting the State's case); *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996) ("Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process.").

"In determining whether a prosecutor's particular actions are entitled to absolute immunity, the courts apply a functional approach, which looks to the nature of the function performed, not

the identity of the actor who performed it." *Jordan*, 2022 WL 4245440, at *4 (internal quotation marks and citations omitted). "Thus, prosecutors enjoy absolute immunity in their review of and decisions to charge a violation of the law." *Id.* (internal quotation marks and citations omitted).[5] *See also Lam v. Finn*, No. 4:22-cv-1058-JAR, 2023 WL 2784929, at *4 (E.D. Mo. Apr. 4, 2023) (internal quotation marks and citations omitted) ("The acts of preparing, signing, and filing a criminal complaint constitute prosecutorial functions, as they are advocacy on behalf of the government.").

Upon consideration, the Court finds Defendants Emmons, Duggan and Kuenzel's actions were taken while initiating and pursuing a prosecution against Plaintiff. As such, said Defendants are absolutely immune from Plaintiff's claims against them.[6] *See Sample*, 836 F.3d at 916; *Woodworth v. Hulshof*, 891 F.3d 1083, 1089 (8th Cir. 2018).

Plaintiff contends that the fraudulent (because falsified) charging document should remove these Defendants' immunity. There is no fraud exception to the absolute immunity enjoyed by prosecutors for actions in this scope, however. *See Imbler*, 424 U.S. at 427-28; *see also Reasonover v. St. Louis County, Mo.,* 447 F.3d 569, 580 (8th Cir. 2006) (prosecutor is immune from suit even if he knowingly presents false, misleading, or perjured testimony); *Jordan*, 2022 WL 4245440, at *5 (internal quotation marks and citations omitted) ("Plaintiffs' claims of improper motive in [Defendant's] performance of prosecutorial functions will also not defeat immunity…Absolute immunity is not defeated by allegations of malice, vindictiveness, or self-

---

[5] "[P]urely administrative or investigative actions that do not relate to the initiation of a prosecution do not qualify for absolute immunity." *See Winslow v. Smith*, 696 F.3d 716, 739 (8th Cir. 2012) (internal quotation marks and citations omitted).

[6] To the extent that Defendant Kuenzel merely supervised the others in bringing the case, and failed to respond to Plaintiff's emails, the conduct attributed to her—inaction—does not form the basis of a claim.

interest. It applies even if the prosecutor's steps to initiate a prosecution are patently improper."). For these reasons, Plaintiff's claims against Defendants Emmons, Duggan, and Kuenzel in their individual capacities are dismissed.[7]

### 2. Defendant Stuckmeyer

At all relevant times, Defendant Stuckmeyer was a judge in the Jefferson County Municipal Court where Plaintiff was prosecuted for a municipal ordinance violation. Plaintiff asserts Stuckmeyer allowed the charge against Plaintiff to proceed, despite the fact that it was allegedly based on fraud. Plaintiff further alleges that during his arraignment, Stuckmeyer entered a plea of not guilty for Plaintiff without Plaintiff's consent, and set the matter for a bench trial despite Plaintiff's desire for a jury trial. Finally, Plaintiff alleges Stuckmeyer denied Plaintiff's request for an attorney; removed a potential witness from the courtroom; conducting a closed hearing; prevented Plaintiff from appearing remotely for a hearing; refused to answer Plaintiff's legal questions; and dismissed Plaintiff's motions after stating he did not have authority to hear them.

Defendant Stuckmeyer asserts he is entitled to absolute judicial immunity from Plaintiff's claims against him.

Judicial immunity provides judges with immunity from suit, allowing them to exercise the authority with which they are vested, and to act upon their own convictions. *See Hamilton v. City of Hayti, Mo.*, 948 F.3d 921, 925 (8th Cir. 2020). *See also Brown v. Griesenauer*, 970 F.2d 431, 435 (8th Cir. 1992) ("Judges are entitled to absolute immunity for actions taken in their judicial capacity."). "Like other forms of official immunity, judicial immunity is an immunity from suit,

---

[7] With respect to Plaintiff's § 1985 conspiracy claim, the Court notes that under Eighth Circuit law, "'a prosecutor is absolutely immune from a civil conspiracy charge when his alleged participation in the conspiracy consists of otherwise immune acts.'" *Woodworth*, 891 F.3d at 1089 (quoting *Reasonover*, 447 F.3d at 580).

- 10 -

not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).[8]  This immunity applies even when the judge is accused of acting maliciously or corruptly.  *Pierson v. Ray*, 386 U.S. 547, 554 (1967).  Further, "a judge will not be deprived of immunity because the action he took was in error…or was in excess of his authority." *Justice Network, Inc. v. Craighead Cty.,* 931 F.3d 753, 760 (8th Cir. 2019) (internal quotation marks and citations omitted).  However, judicial immunity extends to neither "nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity", nor "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* (quoting *Mireles*, 502 U.S. at 11-12).

Upon consideration, the Court finds Plaintiff's allegations against Defendant Stuckmeyer arise out of actions taken entirely within his jurisdiction and in his judicial capacity.  Thus, Plaintiff's claims against Defendant Stuckmeyer fail and are dismissed.  *See Jefferson v. Todd*, No. 1:18-CV-70 ACL, 2018 WL 11247166, at *2 (E.D. Mo. Jul. 13, 2018) ("Plaintiffs complain of actions taken by Judge Copeland as a judge presiding over a criminal case.  Judge Copeland is entitled to absolute immunity, and therefore plaintiffs' claims against him will be dismissed.").

    **3.    Defendants Crews and Jaskiewicz**

At all relevant times, Crews was a deputy sheriff for the Jefferson County Sheriff's Office.  He acted as bailiff in the Jefferson County Municipal Court where Plaintiff was prosecuted for a municipal ordinance violation.  Jaskiewicz was the administrator for the Jefferson County Municipal Court, acting as clerk during the same prosecution.  Plaintiff alleges Crews told Plaintiff to "shut up" during a hearing, and further removed a witness from the courtroom during a later

---

[8] "Judicial immunity protects the finality of judgments, discourages inappropriate collateral attacks, and protects judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants." *Smith v. Finch*, 324 F.Supp.3d 1012, 1020 (E.D. Mo. 2018) (internal quotation marks and citations omitted).

hearing upon the instruction of Stuckmeyer. Plaintiff alleges Jaskiewicz informed Stuckmeyer that Plaintiff was recording the proceedings during a hearing, and further informed Plaintiff of the need to provide proof of a health issue to appear remotely for a hearing, before apparently stating that a physician's note would be required.

While neither Crews nor Jaskiewicz can assert the same immunity claims as the judge and prosecutors, persons who perform quasi-judicial functions are entitled to absolute immunity for certain actions. *See Butz v. Economou*, 438 U.S. 478, 512-16 (1978). *See also Smith,* 324 F.Supp.3d at 1020 (internal quotation marks and citations omitted) ("Through the doctrine of absolute quasi-judicial immunity, courts have extended the protections of judicial immunity to individuals other than judges under some limited circumstances."). As relevant here, acts which may be entitled to quasi-judicial immunity include those closely related to judicial functions, such as carrying out the order of a judge. *See Id.*; *see also Robinson v. Freeze,* 15 F.3d 107, 109 (8th Cir. 1994) (affording absolute quasi-judicial immunity for bailiffs for actions ordered by a judge and related to the judicial function).

Upon consideration, the Court finds Crews' removal of an individual from the courtroom at the order of Stuckmeyer falls squarely within this category of action, and thus is entitled to quasi-judicial immunity. The Court finds the remainder of the complained-of conduct, *i.e.*, Jaskiewicz's informing the judge of Plaintiff's recording activities and stating two different requirements for appearing via teleconference, and Crews' alleged statement to the Plaintiff to "shut up" during a hearing, do not rise to the level of a Constitutional violation.

For these reasons, Plaintiff's claims against Defendants Crews and Jaskiewicz fail and are dismissed.

**IV.     Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss (ECF Nos. 10, 15) are **GRANTED**, and Plaintiff's Complaint is **DISMISSED** with prejudice.  An appropriate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that all other pending motions in this case (ECF Nos. 27, 28, 30, 31) are **DENIED**.

Dated this 23rd day of May, 2025.

RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE